**Jackie R. MASHBURN, Appellant,**

v.

**TRI–STATE MOTOR TRANSIT CO., Respondent.**

**No. 18000.**

Missouri Court of Appeals,
Southern District,
Division Two.

Sept. 23, 1992.

Motion for Rehearing and/or Transfer to Supreme Court Denied
Oct. 14, 1992.

Bruce K. Kirby, Michael D. Mayes, Schmidt, Kirby & Sullivan, P.C., Springfield, for appellant.

L.R. Buehner, Buehner and Buehner, Joplin, for respondent.

MONTGOMERY, Presiding Judge.

Jackie R. Mashburn (Jackie) appeals from a workers' compensation award of the Labor and Industrial Relations Commission (Commission) that affirmed the award of the Administrative Law Judge (ALJ).

Jackie presented two claims for a consolidated trial at a December 21, 1990, hearing. The first claim dealt with an April 2, 1985, left ankle injury which occurred in Gainesville, Georgia. The second claim dealt with a repeat injury to Jackie's left leg and allegedly to his back which occurred on October 9, 1987, in Maumee, Ohio. On both occasions the Employer was Tri–State Motor Transit Co.

The claim was originally filed against the Employer and the Second Injury Fund. The claim against the Second Injury Fund was settled for $23,000 and approved by the ALJ on October 4, 1989.

Jackie contended at his hearing that he sustained a back injury in the second accident which resulted in continuous and unrelenting pain. The ALJ found "there is not sufficient evidence to find that claimant's back injury is a result of any accident at work" and "I cannot believe Claimant's testimony concerning the relationship between his back pain and either injury at work." The ALJ found Jackie was permanently partially disabled to the extent of 25 percent to the lower left extremity. This award resulted in 40 weeks of compensation to be paid at the rate of $150.33 per week for a total of $6,013.20.

The sole point on appeal complains:

The Labor & Industrial Relations Commission erred in adopting the ALJ's award and opinion regarding the 1987 back injury in that there was no substantial evidence to support its finding that the Employee's 1987 back injury was not work related when the overwhelming weight of the evidence indicated it was work related.

■ Our standard of review in this type case is set forth by constitutional, statutory and case law.

The scope of our review in a workers' compensation case is stated in Mo. Const. art[.] V, § 18 and § 287.495, RSMo 1986. From this statute, the constitutional provision, and their predecessors, certain other principles have developed. We review workers' compensation cases in the light most favorable to the award of the Commission and uphold the decision of the Commission if it is supported by competent and substantial evidence on the whole record. We cannot substitute our judgment for that of the Commission. We must disregard any evidence which might support a finding different from that of the Commission and that is true although a finding of the Commission to the contrary would be supported by the evidence.

*Rector v. City of Springfield*, 820 S.W.2d 639, 640 (Mo.App.1991) (footnote omitted) (citations omitted).

■ We defer to the Commission to resolve issues concerning credibility of witnesses. "The Commission is charged with the responsibility of passing upon the credibility of all the witnesses and may disbelieve testimony of a witness even if no contradictory or impeaching evidence appears." *Phillips v. Ozark Bank*, 803 S.W.2d 662, 663 (Mo.App.1991); *Pattengill v. General Motors Corp.*, 820 S.W.2d 112, 113 (Mo.App.1991).

Even though Jackie painstakingly details the evidence to support his position, we must disregard evidence which could support a finding different from that of the Commission. *Rector* at 640. This is true even though a finding of the Commission to the contrary would be supported by the evidence. *Id.*

■ With the foregoing standard in mind, the following evidence clearly supports the Commission's award. Jackie testified his back pain had been constant since his second injury on October 9, 1987, and he complained of such pain to Dr. Currey, his treating physician.[1] Jackie was first treated in the emergency room of St. Luke's Hospital in Maumee, Ohio, on the

---

1. Dr. Currey also treated Jackie for his first injury which occurred April 2, 1985.

date of the second accident. He saw Dr. Currey three days later. Dr. Currey's notes for that visit state:

> Patient returns with a repeat injury to his left leg. This occurred when a piece of steel framing struck him while he was unloading a steel tank. He was apparently flipped in the air and had some back pain, but mainly pain in the left leg where the beam hit the mid portion of his leg and then went down towards the ankle.

Jackie was treated by Dr. Currey for his second injury from October 12, 1987, until July 15, 1988. Dr. Currey testified his notes reveal no further back complaints from Jackie during his treatment, and he had no independent memory of subsequent back complaints.

Jackie was referred by Dr. Currey to a physical therapist, Jeffrey Sodeman, who rendered services to Jackie from prior to the second accident to April 29, 1988. Sodeman testified he never treated Jackie for any back problems, that Dr. Currey never requested such treatment, and he remembered no complaints of back pain by Jackie.

A rehabilitation specialist, Norma Capone, hired by the Employer, rendered services to Jackie from September 1985 through May 5, 1988. In her testimony, she indicated Jackie made no back complaints to her, and she "never coordinated any medical services for his back."

Jackie was released by Dr. Curry to return to light duty work on May 2, 1988. On July 11, 1988, Jackie saw Dr. Walker. He complained of low back pain radiating into his left buttocks resulting from his second accident. Jackie told Dr. Walker he had experienced trouble with his back since his injury of October 9, 1987. Dr. Walker opined that Jackie had a "chronic sprain of the low back."

At the request of Dr. Walker, Jackie was seen by Dr. Spray, an orthopedic surgeon. His diagnosis was degenerative arthritis of the cervical spine and some in the lumbosacral and dorsal spine. Included in his diagnosis was a finding of psychophysiologic musculoskeletal reaction. Dr. Walker indi-

cated that term is a "fancy way of saying [Jackie's] problems were aggravated by depression."

On November 10, 1988, Dr. Brown, another orthopedic surgeon practicing with Dr. Spray, saw Jackie "for a second opinion" at the request of his attorney. Dr. Brown noted Jackie's complaint of "constant and continuous unremitting back pain for about ten months." Dr. Brown's diagnosis agreed with that of Dr. Spray, including the finding of psychophysiologic musculoskeletal reaction. The latter term was further defined by Dr. Brown as "what you might call ... psychosomatic...." In regard to Jackie's constant and continuous unremitting back pain, Dr. Brown testified, "I am always a little suspicious of pain that never goes away, as far as there being a purely physical reason for it. So if someone tells me I have been hurting continuously 24 hours [a] day, day and night for ten years, I would say to myself, 'Well, that's not the normal physiologic pattern for any kind of pain.'"

The findings of the ALJ on the credibility of Jackie prominently mention the findings of Drs. Spray and Brown indicating a psychosomatic component to Jackie's back pain. Such evidence, along with Jackie's failure to complain of back pain to Drs. Currey,[2] Sodeman and Capone, provides a sufficient basis for the Commission to disbelieve Jackie's testimony of a back injury resulting from the second accident. *Phillips*, 803 S.W.2d at 663.

Jackie argues no evidence was presented to contradict his testimony of a back injury. He reasons that the facts are therefore undisputed. Thus, he contends the award that should be entered by the Commission becomes a question of law, and the Commission's findings are not binding on this Court. For this proposition he cites *Merriman v. Ben Gutman Truck Serv., Inc.*, 392 S.W.2d 292, 297 (Mo.1965), and *Hunt v. Allis–Chalmers Mfg. Co.*, 445 S.W.2d 400, 401 (Mo.App.1969). Neither case aids Jackie because each case dealt only with undisputed facts. Neither witness nor claimant credibility was an issue in either case. Here, the believability of Jackie was a clear

---

**2.** We have noted Jackie did complain of "some back pain" to Dr. Currey on October 12, 1987.

However, the evidence reveals no later similar complaints to Dr. Currey.

issue due to his lack of back injury complaints until over nine months after the accident. The Commission is entitled to disbelieve Jackie's testimony even though no contradictory evidence appears. *Phillips*, 803 S.W.2d at 663.

Our review of the record convinces us ample evidence exists from which the Commission could properly rule as it did. Since the Commission's award is supported by the evidence, it must be affirmed. *Rector*, 820 S.W.2d at 640.

In his argument, Jackie invites our review of whether he was permanently and totally disabled from his back injury. This contention does not appear in the only point before us. A reviewing court is obliged to determine only those questions stated in the points relied on. Issues raised only in the argument portion of the brief are not presented for review. *Biermann v. Gus Shaffar Ford, Inc.*, 805 S.W.2d 314, 325 (Mo.App.1991); *Landoll by Landoll v. Dovell*, 779 S.W.2d 621, 627 (Mo.App.1989); *Berger v. Huser*, 498 S.W.2d 536, 539 (Mo. 1973).

The award of the Commission is affirmed.

FLANIGAN, J., and PREWITT, J., concur.