Payne RICE d/b/a Payne Rice Construction Company, Payne Rice Construction Company and United States Fidelity & Guaranty Company, Appellants,

v.

Hollie CONLEY and Amax Petroleum Corporation, Workmen's Compensation Board, Appellees.

Court of Appeals of Kentucky.

Feb. 10, 1967.

As Modified on Denial of Rehearing May 12, 1967.

J. K. Wells, Paintsville, for appellants.

G. C. Perry, III, Paintsville, Earl Cooper, Salyersville, Robert L. Milby, Hamm, Taylor & Milby, London, for appellees.

OSBORNE, Judge.

This is an appeal from the judgment of the Magoffin Circuit Court, which reversed in part and affirmed in part, the actions of the Kentucky Workmen's Compensation Board. The facts of the case are somewhat complex, and we will, therefore, set them out with some degree of detail.

In November of 1963, Amax Petroleum Corporation was involved in the process of cleaning up an oil field. This involved pulling pipe and moving storage tanks. In order to secure the services of Payne Rice, his trucking equipment and his crew of men, Amax and Rice entered into the following agreement:

"November 7, 1963

This agreement made between Amax Petroleum Corporation and Payne Rice is covered by the following letter:

Amax Petroleum Corporation agrees to pay Payne Rice $1.85 per hour, per man for the taking up and hauling of pipe and connections, also the moving of 210 bbl. tanks.

Trucks and other equipment used on the project is to be at the going price per hour for this district. Payne Rice, himself, is to receive $2.50 per. hour for supervision and is to be paid for only the actual time spent on the job.

Payne Rice is to furnish all necessary insurance and Workmen's Compensation to cover all men and equipment hired or used on the job."

On May 4, 1964, Rice hired Hollie Conley, the claimant herein, and put him to work in the field at $1.25 an hour. He paid Conley each week for his services. However, because of the nature of the work, Conley took directions from the employees of both Amax and Payne Rice. In Conley's testimony in the Transcript of Evidence, page 40, question 22, he stated:

"Q. 22. By check. Now had you ever at any time been employed by Amax Petroleum?

A. No, sir" (Tr., p. 40).

On August 12, 1964, Conley was injured while carrying a skid pole, which injuries were considered to be total and permanent. On October 15, 1964, he filed an application for adjustment of his claim with the Workmen's Compensation Board, and named as respondents therein Payne Rice Construction Company and United States Fidelity & Guaranty Company. When the claim was first brought on for hearing on December 21, 1964, Payne Rice indicated that they would be contending that the plaintiff was working for Amax Petroleum Corporation rather than for Payne Rice.

This is shown by the Affidavit of G. C. Perry, attorney for the plaintiff. Following this announcement, the plaintiff Hollie Conley moved the Board and was granted permission to make Amax Petroleum a party to the compensation action, for the reason that Payne Rice was denying liability and on January 22, 1965, the Board entered the following order:

"It is ordered by the Board that the plaintiff's motion to amend application for adjustment of claim by adding additional defendant Amax Petroleum Company filed herein December 23, 1965, be and the same is sustained and Amax Petroleum is made a party defendant."

Following this order, and on February 15, 1965, Amax Petroleum entered a motion before the Workmen's Compensation Board to be discharged as a party to the proceedings for the reason that the claimant was an employee of Payne Rice and not of Amax Petroleum. This question was passed to the merits of the case. The Board heard the case and on February 28, 1966, entered its order in which it found that the claimant was totally and permanently disabled, found that his average weekly wage was $50.00 and stated that the only question remaining for determination by the Board was, "Which of the defendants is liable for Plaintiff's compensation or whether both of them are?"

The Compensation Board, after reviewing the facts and noting that Hollie Conley worked under the directions of Raymond Conley, the head roust-about of Amax, determined that the question presented involved an application of the "loaned employee" doctrine. This doctrine is found in Larson's works, The Law of Workmen's Compensation, section 48, and reads as follows:

"When a general employer lends an employee to a special employer, the special employer becomes liable for Workmen's Compensation only if (a) the employee had made a contract of hire expressed or implied with the special employer, (b) the work being done is essentially that of a special employer, (c) the special employer has the right to control the details of the work. When all three of the above conditions are satisfied in relation to both employers, both employers are liable for Workmen's Compensation."

The Board applying the above doctrine concluded that as between the plaintiff and the two employers, the plaintiff was entitled to an award against both, and the Board expressed no opinion as to the respective rights or liabilities of Rice and Amax as against each other. This award was appealed to the Circuit Court and was there modified. The court held that under the contract of Rice and Amax, Rice should be primarily liable, since he, Rice, was required to procure and furnish Workmen's Compensation for the men furnished to Amax. The court proceeded and held that Amax was to be secondarily liable and upon claimant's failure to recover from Rice then Amax would be liable for the payments.

We are of the opinion that the judgment of the circuit court should be reversed to the extent that it holds Amax responsible for any portion of the payments. KRS 342.285 in which we adopted the "clearly erroneous" rule provides that the court may set aside an award if "the order, decision, or award is clearly erroneous on the basis of the reliable, probative and material evidence contained in the whole record." The facts of the case clearly show that Conley was an employee of Payne Rice. The facts further show that Payne Rice had complied with the provisions of the Kentucky Workmen's Compensation Act and that U.S.F. & G. was the compensation insurance carrier. Conley testified that he was not an employee of Amax and the record further shows he only made Amax a party to the claim because of a move on the part of Payne Rice to shed liability and place it upon Amax. It is understandable that Conley did not wish to be a victim of this controversy. In order for compensation to be payable, there must be a contract

of hire between the employer and the employee, General Refractories Company, Inc. v. Henderson, 313 Ky. 613, 232 S.W.2d 846, and though it is not necessary for the contract of hiring to be in writing all of the elementary ingredients of a contract must be present. There was no such contract between Amax and Conley. The "loaned employee" doctrine was instituted for the protection of the employee and not for the purpose of allowing a bona fide employer to shift his responsibility to a fellow employer under whom he might be operating. "An employee, for compensation purposes, cannot have an employer thrust upon him against his will or without his knowledge." Larson, Vol. 1A, p. 713, sec. 48.10.

We are of the opinion that the motion to dismiss filed by Amax should have been sustained by the Board. To this extent, the judgment is reversed; in all other respects, it is affirmed.

All concur.

MILLIKEN, J., not sitting.